UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STAY-N-PLAY DISCOVERY SCHOOL, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2979** |
| **RON M. ALVEREZ, AYANNA AGE ALVEREZ, STONINGTON INSURANCE COMPANY, AND FIDELITY NATIONAL PROPERTY AND CASUALTY** | **SECTION "K"(4)** |

## ORDER AND OPINION

Before the Court is plaintiff Stay-N-Play Discovery School's motion for summary judgment. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies the motion for summary judgment.

BACKGROUND

Stay-N-Play Discovery School, Inc. (Stay-N-Play), a corporation owned solely by Richard LaMury, sold the building located at 7945 Edgelake Court to Ayanna and Ron Alverez pursuant to a credit sale. Additionally, Stay-N-Play leased a second building, located at 7944 and 7948 Edgelake Court to Ron and Ayanna Alverez; in June 2006, the Alverezes purchased that building from Stay-N-Play.

In August 2005, as a result of Hurricane Katrina, all of the buildings sustained wind and flood damage.[1] The Alverezes failed to make the required monthly payments for the property located at 7945 Edgelake Court in September, October, and November 2005. In December 2005, Richard LaMury spoke to Louis Age, Ayanna Alverez's father, concerning the Alverezes' failure

---

[1] Several months after Hurricane Katrina, the damaged buildings were destroyed by fire.

to make the requisite payments. Mr. Age asserts that during that conversation Mr. LaMury agreed to put the overdue payments on the "back end" of the loan. Mr. LaMury denies entering into any such agreement. Thereafter Ayanna Alverez sent Mr. LaMury a check for $2,531.00 representing the December payment; Mr. LaMury returned the payment.

After Mr. LaMury returned the December payment, on January 4, 2006, Ayanna Alverez sent him a check for $12,656.00 representing the September, October, November, December, and January payments. Ayanna Alvarez alleges that on January 5, 2006, she had a telephone conversation with Mr. LaMury during which they discussed the payment of the delinquent amounts due under the credit sale as well as insurance matters affecting the properties. Specifically, Ayanna Alverez states that during the January 5, 2006, telephone conversation she informed Mr. LaMury: 1) that she had mailed the payments to him, 2) that she had filed claims with the insurance companies for the damages to the buildings, 3) that there was sufficient insurance coverage on the property to pay the balance due under the promissory note, 4) that Stay-N-Play was named as a loss payee under the policy, and 5) that a monthly payment would be made on the note each month until the insurance companies paid the damage claims. Mrs. Alverez asserts that during that telephone conversation Mr. LaMury agreed that the late fees due for the failure to timely make the September, October, November and December payments would be collected when the insurance companies paid the claims. Mrs. Alverez further states that following her January 5, 2006 telephone conversation with Mr. LaMury, she sent him a letter the same day reiterating the substance of their telephone conversation described above and stating that the parties had agreed that "no other terms or conditions would be applicable to the mortgage agreement." Mr. LaMury denies speaking with Mrs. Alverez on January 5, 2006, and denies receiving the January 5, 2006, letter.

2

On January 24, 2006, counsel for Stay-N-Play wrote to the Alverezes advising them that the terms of the credit sale and lease obligated them to maintain casualty and flood insurance on the properties and to designate Stay-N-Play or Richard LaMury as a loss payee on the policy. Counsel's letter also requested the names, addresses, and policy numbers of the applicable policies as well as the name of the insurance agency which procured the insurance policies for the various properties. The Alvarezes did not respond to that letter.

On April 28, 2006, Stay-N-Play filed suit in state court against Ron and Ayanna Alvarez, Stonington Insurance Company (Stonington), the casualty insurer for the properties, and Fidelity National Property and Casualty (Fidelity), the alleged flood insurer. Plaintiff sought, among other things, a declaratory judgment that Stay-N-Play receive in full ownership and by direct payment all insurance proceeds payable under the applicable insurance policies and a judgment against the Alvarezes for breach of contract for "reasonable damages . . . together with attorney's fees, judicial interest from date of judicial demand and court costs." Defendant Fidelity removed the suit to this court.[2]

In November 2006, plaintiff and defendants reached a settlement of the claim under which Stonington agreed to pay a total of $511,747.10 for the damages sustained by the buildings. Plaintiff agreed to accept $252,550.00 as principal and penalties due on the promissory note. Additionally, the parties agreed that $50,000.00 of the amount paid by Stonington would be placed in the registry of the court as a fund for attorneys fees should plaintiff prevail on its claim for attorneys fees. The Alverezes received the balance of the proceeds.

---

[2]Fidelity has now been dismissed from the suit.

3

LAW AND ANALYSIS

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995). Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff contends that the Alverezes were in default under the terms of the credit sale as a result of failing to pay the full amount due under the promissory note, failing to pay the applicable

late fees, failing to provide Stay-N-Play with the insurance information, the insurance policies and the insurance renewals as required by the credit sale, failing to inform Stay-N-Play of their whereabouts following Hurricane Katrina, and failing to respond to the January 26, 2006 letter from Stay-N-Play's counsel. The credit sale required, among other things, that the purchasers make payment of the note or any amount due or that becomes due under the note, keep the property insured against casualty loss in an amount of not less than $200,000, name Stay-N-Play as loss payee on the insurance policy, and deliver the insurance policy and the renewals of the policy to Stay-N-Play. The credit sale also provides that default as to any of the above noted requirements of the credit sale "shall, after 10 day written demand from the holder of the note, without further necessity of putting in default, automatically mature all unpaid amounts on the mortgage note identified herein."

Relying on language in the promissory note and the credit sale, plaintiff seeks a summary judgment granting it attorneys fees of $50,501.00, representing twenty (20%) percent of the $252,550 balance on the promissory note and the applicable late fees. The promissory note provides that:

> The makers and endorsers hereof agree that in the event that this note is not paid in full at maturity and in the event that the same is placed in the hands of an attorney for collection, that makers and endorsers shall pay the fees of such attorney employed for this purpose, which fees are hereby fixed at twenty (20%) per cent of the full amount due in principal and interest.

The Act of Credit Sale includes similar language; it provides:

> To secure the punctual payment of the above-described note at maturity, as well as all interest to accrue thereon, and to secure the payment of the fees of any lawyers employed to collect the same or any part thereof, (which lawyer's fees, however, are fixed at twenty (20%) percent on the amount claimed and PURCHASER consents

5

and agrees to pay and allow the same), . . ..

Each of these agreements provides for attorneys fees <u>only</u> when it becomes necessary to obtain

counsel to secure payment of the note. Plaintiff does not dispute that the Alverezes sent him a check for the September, October, November, and December payments on January 5, 2006, and that he cashed that check on January 17. 2006. There is no evidence that prior to those dates, counsel acting on behalf of Stay-N-Play made any attempt to collect the delinquent monthly payments. Therefore, plaintiff is not entitled to attorneys fees in connection with the late payment of the amounts due in September, October, November, and December.

Moreover, although plaintiff contends in this motion for summary judgment that the Alvarezes were in default for "failure to pay the promissory note" there is no evidence that counsel acting on behalf of Stay-N-Play ever demanded or attempted to collect the entire loan balance because of the late payments following Hurricane Katrina.[3] In fact, plaintiff's suit does not allege that the entire amount of the note is due as a result of the failure to make payments timely. Rather, it seeks an order recognizing plaintiff as a loss payee on the applicable insurance policies and seeks sufficient proceeds from those policies to pay the balance due under the promissory note. Because plaintiff's counsel never attempted to collect the balance due under the note as a result of the Alvarezes' late tender of the September, October, November, and December payments, plaintiff is

---

[3] The credit sale provides that "[i]f the Mortgagor is more than forty-five (45) days late in making a monthly payment, then the Mortgagor shall be in default and the holder of the note may demand the entire loan balance immediately due and payable,"

6

not entitled to an award of attorneys fees for the failure to pay the balance due under the promissory note.

**IT IS ORDERED** that plaintiff Stay-N-Play Discovery School, Inc.'s motion for summary judgment is denied.

New Orleans, Louisiana, this 3rd day of October, 2007.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE